UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MERCADO,

        Plaintiff,                                  Hon. Robert J. Jonker

v.                                                 Case No. 1:10-CV-1061

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age as of the date of the ALJ's decision.  (Tr. 17, 85).  He possesses a General Equivalency Diploma (GED) and worked previously as a laborer, merchandise deliverer, box maker, and machine operator.  (Tr. 15, 117-23, 126).

Plaintiff applied for benefits on September 12, 2007, alleging that he had been disabled since October 28, 2005, due to back problems, degenerative disc disease, and a torn meniscus in his right knee.  (Tr. 83-97, 126).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 42-81).  On February 22, 2010, Plaintiff appeared before ALJ Scott Staller, with testimony offered by Plaintiff and vocational expert, Richard Riedl.  (Tr. 21-41).  In a written decision dated April 15, 2010, the ALJ determined that Plaintiff was not disabled prior to the expiration of his insured status.  (Tr. 9-17).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-3).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2009.  (Tr. 11).  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

3

## RELEVANT MEDICAL HISTORY

On October 19, 2003, Plaintiff participated in an MRI examination of his lumbosacral spine the results of which revealed "a minimal anterior superior end plate compression at the T12 vertebral body" and "a very minimal midline disc protrusion at the L4[-]5 disc level." (Tr. 151). On December 11, 2003, Plaintiff participated in a whole body bone scan the results of which revealed "no focal abnormalities." (Tr. 193).

On July 18, 2006, Plaintiff was examined by Dr. Christina Pareigis. (Tr. 167-68). Plaintiff reported that he was experiencing "pain in the tailbone region radiating into the hips and down to the legs and knees bilaterally" as well as "right knee pain and swelling." (Tr. 167). Plaintiff reported that he began experiencing these difficulties after "he slipped and twisted his right knee and hit his right knee on a machine" at work. (Tr. 167). Plaintiff exhibited "normal" range of motion in his hips, knees, and ankles. (Tr. 168). Plaintiff exhibited "intact" sensation and muscle strength. (Tr. 168). An examination of Plaintiff's spine revealed "tenderness to palpation over the SI areas bilaterally" and an examination of his right knee revealed "mild effusion and mild joint tenderness." (Tr. 168). Plaintiff was prescribed medication and instructed to participate in a walking and stretching program. (Tr. 168). X-rays of Plaintiff's sacrum and coccyx, taken on August 9, 2006, revealed "normal alignment of the segments" with no evidence of fracture. (Tr. 189).

On September 12, 2006, Plaintiff was examined by Dr. Pareigis. (Tr. 165-66). A physical examination revealed the following:

> MSR are symmetric in both lower extremities. SLR is negative. Distal strength appears to be intact and symmetric. He has decreased effusion and swelling in the right knee as compared to his last examination. No ligamentous laxity could be appreciated, however,

> he does complain of some pain with ROM. ROM is within functional limits. No paraspinal muscle spasms are noted. He does have tenderness over the SI area and over the coccyx.

(Tr. 165). Plaintiff was instructed to continue participating in a stretching program, but was instructed to engage in only "limited walking or standing activities." (Tr. 165). The doctor indicated that Plaintiff could perform work activities subject to the following "permanent" limitations: (1) no lifting greater than 15 pounds, (2) no repetitive bending or twisting at the waist, and (3) he requires a sit/stand option. (Tr. 165).

On October 26, 2006, Plaintiff participated in an MRI examination of his right knee the results of which revealed a "lateral meniscal tear." (Tr. 154).

Plaintiff was again examined by Dr. Pareigis on November 7, 2006. (Tr. 164). A physical examination revealed the following:

> He has slight tenderness throughout the lower lumbar and SI region. SLR is negative except for right knee. Distal strength is intact and symmetric. He has right knee medial joint weakness. His flexion is also limited to 90 degrees. I was unable to appreciate any ligamentous laxity. Effusion appears to be decreasing as compared to previous exam.

(Tr. 164). The doctor concluded that Plaintiff was experiencing "mechanical" low back pain "without evidence of neurologic compromise" and right knee pain. (Tr. 164). Plaintiff was instructed to continue performing lower back stretching and strengthening exercises. (Tr. 164).

On December 15, 2006, Plaintiff reported to Dr. Pareigis that he was experiencing "numbness and tingling" in his lower extremities. (Tr. 163). The doctor reported that the results of a physical examination were "unchanged from previous examinations." (Tr. 163). On December 21, 2006, Plaintiff participated in an MRI examination of his lumbar spine the results of which

revealed "mild lumbar degenerative changes" with no evidence of disc herniation of spinal stenosis. (Tr. 152-53).

On May 18, 2007, Plaintiff was examined by Dr. Pareigis. (Tr. 161). Plaintiff reported that he was experiencing lower back pain "without radicular symptoms." (Tr. 161). An examination of Plaintiff's right knee revealed "some pain with end ROM," but no evidence of effusion. (Tr. 161).

On February 5, 2007, Plaintiff was examined by Dr. Pareigis. (Tr. 160). Plaintiff reported that "his legs are numb and tingling all over most of the time." (Tr. 160). Straight leg raising was negative bilaterally and Plaintiff exhibited intact and symmetric strength in both lower extremities. (Tr. 160). Plaintiff was able to walk on his toes without difficulty and exhibited no evidence of foot drop. (Tr. 160). The doctor observed that Plaintiff's complaints of numbness and tingling were "not in a neurologically focal distribution" and that there existed "no evidence of neurologic compromise on physical examination." (Tr. 160).

On December 3, 2007, Plaintiff was examined by Dr. Pareigis. (Tr. 159). A physical examination revealed the following:

> He moves in a guarded fashion from sit to stand. He ambulates independently without an assistive device in a forward flexed posture and somewhat of an antalgic gait with decreased weight shift into the right. MSR are symmetric. SLR is negative. No acute effusion is noted at the knee. Distal strength is intact and symmetric.

(Tr. 159).

On December 13, 2007, Plaintiff was examined by Dr. Jared Griffith. (Tr. 170-72). A physical examination revealed the following:

> There are no obvious bony deformities. Peripheral pulses are easily palpated and symmetrical. There is no edema. There are no varicose

> veins. The patient has no difficulty getting on and off the examination table but mild difficulty with heel-toe walking and moderate difficulty with squatting. Strength is preserved in all extremities. There are hammer toe deformities noted as the bilateral second digits of the feet. Evaluation of the right knee demonstrates a positive Apley compression test[1] and negative drawer sign.[2] There is no joint effusion. The patient is wearing a soft neoprene brace on the right knee. There is left lumbar paravertebral muscle spasm and decreased range of motion of the lumbar spine.

(Tr. 171). A neurological examination revealed the following:

> Reflexes are present and symmetric in all extremities. Vibratory and pinprick sensations are intact in the lower extremities. There are non-reactive Babinski.[3] Romberg testing[4] is negative. Finger-nose-finger evaluation is appropriate. There is negative straight leg raising test bilaterally.

(Tr. 172). Dr. Griffith also noted that Plaintiff "uses a cane for assistance in ambulation which does not appear to be necessary for short distances but due to the previously described findings on the right knee may be necessary for extended distances." (Tr. 172).

At the administrative hearing, Plaintiff testified that he was experiencing "constant 24/7 pain" in his lower back. (Tr. 29). Plaintiff also testified that he was experiencing "constant" pain in his right knee. (Tr. 30). Plaintiff reported that because of his pain and impairments he "can't hardly sleep." (Tr. 30). Plaintiff reported that on a typical day he attempts to "work on some dishes

---

[1] Apley's compression test is designed to determine the presence of a meniscal tear in the knee. *See* Apley's Compression Test, available at http://ahn.mnsu.edu/athletictraining/spata/kneemodule/specialtests.html (last visited on February 9, 2012).

[2] Posterior and anterior drawer tests are designed to determine the presence of a PCL (posterior cruciate ligament) or ACL (anterior cruciate ligament) tear, respectively. *See* Posterior Drawer Test and Anterior Drawer Test, available at http://ahn.mnsu.edu/athletictraining/spata/kneemodule/specialtests.html (last visited on February 9, 2012).

[3] Babinski test is a neurological test designed to discern damage to the central nervous system. *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on February 9, 2012).

[4] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on February 9, 2012). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

and vacuum and just light stuff," but spends "most" of his time sitting. (Tr. 31). Plaintiff testified that he can "barely" lift a 10 pound bag of sugar and is unable to lift a 20 pound bag of potatoes. (Tr. 33). Plaintiff testified that on a "good day" he can "probably walk two city blocks." (Tr. 33). He also reported that he can stand for 15 minutes continuously. (Tr. 33).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative joint disease of the right knee; (2) meniscal tear of the right knee; (3) degenerative disc disease; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 11).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[6] subject to the following limitations: (1) he can walk for only two hours during an 8-hour workday; (2) he can sit for six hours during an 8-hour workday; (3) he can only occasionally perform pushing or pulling activities with his right lower extremity; (4) he must use a cane when walking "extended" distances; (5) he cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps or stairs; (6) he can only occasionally

---

[6] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

balance, stoop, kneel, crouch, or crawl; and (7) he must avoid all concentrated exposure to vibrations. (Tr. 12).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Richard Riedl.

The vocational expert testified that there existed approximately 6,000 jobs in the state of Michigan (and 221,000 nationally) which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 34-38). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

          a.      The ALJ Properly Relied on the Vocational Expert's Testimony

Pursuant to Social Security Ruling 00-4p, if a vocational expert offers testimony that conflicts with information contained with the Dictionary of Occupational Titles (DOT), the ALJ "must resolve this conflict before relying on the [vocational expert's testimony] to support a determination or decision that the individual is or is not disabled." Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 at *4 (S.S.A., Dec. 4, 2000). Plaintiff asserts that the ALJ failed to comply with this requirement thus rendering improper and insufficient his reliance on the vocational expert's testimony.

As Defendant correctly asserts, the ALJ's duty to question a vocational expert whether her testimony conflicts with information contained in the DOT arises only "if the [vocational expert's] evidence appears to conflict with the DOT." *Lindsley v. Commissioner of Social Security*, 500 F.3d 601, 603 (6th Cir. 2009) (quoting S.S.R. 00-4p); *see also*, *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (where no discrepancy between the DOT and the vocational expert's testimony has been identified, the ALJ "is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]"); *Jones v. Barnhart*, 2005 WL 66072 at *12 (N.D. Ill., Jan. 10 ,2005) (same). When testifying as to the various jobs that an individual with Plaintiff's limitations could nevertheless perform, the vocational expert expressly referenced the DOT. (Tr. 37-38). Given that the vocational expert's testimony was based on the DOT, it is not reasonable to argue that the vocational expert's testimony was in apparent conflict with the DOT thus requiring the ALJ to inquire as to such.

Plaintiff further argues that according to the DOT, the jobs which the vocational expert identified as within Plaintiff's capabilities are, in fact, classified as "light" jobs which require a greater level of functioning than the ALJ determined Plaintiff possesses. Plaintiff argues, therefore, the ALJ's reliance of the vocational expert's testimony is improper. While it is accurate that the DOT identifies the jobs in question as "light" in terms of strength required, it must be remembered that "the DOT only lists the maximum requirements of occupations as they are generally performed and not as they are performed in specific instances." *Dunlap v. Barnhart*, 2004 WL 784837 at *14 (W.D. Tenn., Mar. 15, 2004) (citing Social Security Ruling 00-04p). Thus, it is not clear that the vocational expert's testimony regarding the specific jobs which Plaintiff can perform despite his impairments was inconsistent with the DOT's description of such jobs.

In sum, the Court discerns no error in the ALJ's reliance on the vocational expert's testimony or his failure to question the vocational expert concerning any conflict between his testimony and the information contained within the Dictionary of Occupational Titles.

      b.      The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that he was impaired to an extent beyond that recognized by the ALJ. Specifically, Plaintiff testified that he experienced "constant" pain in his lower back and right knee. Plaintiff testified that while he attempts to perform certain limited activities, because of his impairments he spends "most" of his time just sitting. Plaintiff also testified that he can "barely" lift 10 pounds and is unable to lift 20 pounds. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity

assessment." (Tr. 12). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ recognized, Plaintiff's allegations are "generally credible" in light of the severe impairments from which he suffers. (Tr. 14). However, as the ALJ described in detail, Plaintiff's subjective allegations concerning the extent to which he is limited are simply not supported by the medical evidence. (Tr. 12-15). In assessing the medical evidence, the ALJ did not misinterpret the factual record or identify only that evidence which supports his conclusion, but instead discussed the record in detail and articulated clear reasons why he found Plaintiff less than completely credible. Because the ALJ's rationale in this regard is supported by substantial evidence in the record, the Court discerns no error in the ALJ's decision to discount Plaintiff's subjective allegations of pain and limitation. *See Norris v. Commissioner of Social Security*, 2012 WL 372986 at *4-5 (6th Cir., Feb. 7, 2012) (where the ALJ "did not misconstrue facts in the record or overlook other significant evidence. . .and identified specific facts supported by the record" which to "a

reasonable mind" would "cast doubt on" a claimant's subjective allegations, the ALJ's decision to discount the claimant's credibility is not in error).

          c.        The ALJ Failed to Properly Evaluate the Medical Evidence

As noted above, on September 12, 2006, Dr. Pareigis reported that Plaintiff could perform work activities subject to the following "permanent" limitations: (1) no lifting greater than 15 pounds, (2) no repetitive bending or twisting at the waist, and (3) he requires a sit/stand option. The ALJ rejected this particular opinion. Plaintiff argues that because Dr. Pareigis was his treating physician, the ALJ was required to afford controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ acknowledged that Dr. Pareigis had imposed on Plaintiff "permanent" work restrictions which were inconsistent with his RFC determination. (Tr. 13). While the ALJ declined to afford controlling weight to this opinion, his rationale for doing so does not survive scrutiny.

As for the doctor's conclusion that Plaintiff required a sit-stand option, the ALJ rejected such on the ground that "the claimant displayed no apparent problems with his ability to sit and the restriction on his standing for 2 hours in an 8-hour day takes into account his deficits in standing." (Tr. 15). With respect to the ALJ's observation that Plaintiff "displayed no apparent problems with his ability to sit," the ALJ appears to have subjected Plaintiff to the long discredited "sit and squirm" test. *See, e.g., Johnson v. Commissioner of Social Security*, 2000 WL 332059 at

16

*4 (6th Cir., Mar. 22, 2000). More importantly, the ALJ's conclusion that Plaintiff's need for a sit/stand option is sufficiently accommodated by the restriction that he can stand for only two hours during the workday is unpersuasive.

A sit/stand option permits an individual to sit or stand at their option throughout the workday. On the other hand, to conclude that an individual can stand for two hours during the workday says absolutely nothing about how the amount of time the individual can stand is distributed throughout the workday. The Court concedes that it is likely that a job that satisfies the limitation that Plaintiff can stand for only two hours during the workday would also permit Plaintiff to sit/stand at his option, nevertheless the Court is neither qualified nor permitted to make such a factual determination in the first instance. The Court concludes, therefore, that the ALJ's rationale for rejecting the opinion that Plaintiff requires a sit/stand option is not supported by substantial evidence.

As noted, the ALJ also rejected Dr. Pareigis' opinion that Plaintiff could not lift more than 15 pounds and instead found that Plaintiff could lift up to 20 pounds. In support of this particular conclusion, the ALJ stated that such "is supported by [Plaintiff's] own statements of his limitations and the signs from his examinations revealing that he had good muscle strength throughout his extremities." (Tr. 14). This rationale is equally unpersuasive.

First, as previously discussed, Plaintiff specifically testified that he could *not* lift 20 pounds. Moreover, while the record indicates that Plaintiff on occasion exhibited "intact" or "preserved" muscle strength, such information, by itself, says absolutely nothing about the amount of weight that Plaintiff can safely or repetitively lift or carry. In this respect, the Court notes that the observation that Plaintiff possessed intact strength was most often made by Dr. Pareigis the very

same doctor that limited Plaintiff to lifting no more than 15 pounds. Thus, to the extent that the ALJ is interpreting Dr. Pareigis' finding that Plaintiff possesses intact strength as support for his conclusion that Plaintiff can lift 20 pounds, the ALJ is essentially substituting his lay judgment for that of a trained physician who has a lengthy treatment relationship with Plaintiff. The Court, therefore, finds that the ALJ's rationale for rejecting the limitation that Plaintiff can lift no more than 15 pounds is not supported by substantial evidence.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, specifically the treating physician rule, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. As discussed herein, resolution of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not comply with the proper legal standards and is not supported by substantial evidence.

Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 14, 2012

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge